1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

NATIONWIDE BIWEEKLY
ADMINISTRATION, INC.,

        Plaintiff,

  v.

JAN LYNN OWEN, in her official capacity
as Commissioner of the Department of
Business Oversight for the State of
California,

        Defendant.

Case No.:14-CV-05166-LHK

**ORDER DENYING MOTION FOR
PRELIMINARY INJUNCTION**

Re: Dkt. No. 5

Before the Court is a motion for preliminary injunction filed by Plaintiff Nationwide

Biweekly Administration, Inc. ("Nationwide"). ECF No. 5 ("Motion"). Nationwide requests that

the Court issue a preliminary injunction prohibiting Defendant Jan Owen ("Defendant"), in her

official capacity as Commissioner of the Department of Business Oversight for the State of

California ( "DBO"), from enforcing California Financial Code § 12200.1, which regulates

proraters in California. Having considered the submissions of the parties and the relevant law, the

Court hereby DENIES Nationwide's Motion, for the reasons stated below.

**I.   BACKGROUND**

1

### A.  Factual Background

Nationwide is an Ohio Corporation with its headquarters in Xenia, Ohio. ECF No. 1 ("Compl."), ¶ 3. Defendant is the Commissioner of the DBO for the State of California. *Id*. ¶ 4.

Nationwide is an administrator of biweekly loan repayment programs. *Id*. ¶ 8. Nationwide has approximately 125,000 customers around the country, including over 10,000 in California. *Id*. At issue in the instant litigation is a Nationwide program called the "Interest Minimizer" biweekly program, which is targeted at borrowers with home mortgages. *Id*. ¶ 10. According to Nationwide, most mortgage servicers debit a borrower's mortgage payments on a monthly basis. *Id*. Under Nationwide's "Interest Minimizer" program, Nationwide acts as an intermediary between the borrower and the mortgage servicer. Specifically, Nationwide arranges with the borrower to debit one-half of the borrower's monthly mortgage payment from the borrower's checking account every other week. *Id*. Nationwide then remits the mortgage payments to the mortgage servicer once per month, as required by the servicer. *Id*. However, because Nationwide debits the mortgage payments on a bi-weekly (as opposed to monthly) basis, Nationwide debits 26 times over the course of the year, effectively resulting in the creation of a 13th annual payment (as opposed to 12 annual payments under a traditional monthly repayment plan). *Id*. ¶¶ 9, 12-13. Nationwide claims that the extra payment per year saves its customers money by allowing Nationwide's customers to pay off their mortgage loans faster than they otherwise would. *Id*. ¶ 12-13.

### 1.  Investigation of Nationwide's Business Practices in California

The instant litigation stems from an investigation initiated by the Monterey County and Marin County District Attorneys' Offices into Nationwide's business practices in California. [1] On July 30, 2013, Nationwide received a letter from the Monterey County District Attorney's Office.

---

[1] Nationwide has filed a separate related lawsuit against the Monterey County and Marin County District Attorneys' Offices, as well as two deputy district attorneys from those offices. *See Loan Payment Administration LLC et al. v. Hubanks et al.*, Case No. 14-CV-05166-LHK. In that case, Nationwide also filed a motion for preliminary injunction seeking to prohibit the District Attorneys from enforcing certain state statutes against Nationwide. *See* Case No. 14-CV-05166-LHK, ECF No. 5. This Court denied Nationwide's motion for a preliminary injunction on March 17, 2015. *See* ECF No. 50.

2

Case No.: 14-CV-05166-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
Northern District of California

1    ECF No. 5-1, at 14 ("Enforcement Letter"). The Enforcement Letter stated that the District

2    Attorneys for Marin and Monterey County "are in receipt of numerous complaints about the

3    marketing and business practices of Nationwide Bi-Weekly Administration, Inc." *Id*. The subject

4    of the consumer complaints were solicitation letters Nationwide mailed to homeowners asking

5    them to participate in Nationwide's "Interest Minimizer" program. *Id*. These solicitation letters

6    used the names of the homeowners' mortgage lenders—including in the headers of the letters and

7    multiple times throughout the letters' text—as well as homeowners' loan information, such as

8    their loan amounts. *Id*. at 14-16. According to the Enforcement Letter, Nationwide's use of

9    lenders' names and consumer loan information "[has] the capacity to deceive and mislead

10   consumers into believing Nationwide is sponsored by or affiliated with the lender, the solicitation

11   is authorized by the lender, or the consumer's loan information was provided by the lender." *Id*. at

12   15. The Enforcement Letter also stated that Nationwide's use of lenders' names and consumers'

13   loan information violated state consumer fraud statutes as well as the state's prohibition on

14   unlawful business practices. *Id*. at 14-16.

15          The Enforcement Letter then stated that Nationwide "may [also] be in violation of

16   California's Check Sellers, Bill Payers and Proraters Law (California Finance Code section 12000

17   *et. seq.*)." *Id*. at 16. According to the Enforcement Letter, based on Nationwide's offer to

18   California customers of the company's "Interest Minimizer" service, "it would appear Nationwide

19   is acting as a prorater and therefore required to obtain a prorater license."[2] *Id*. The Enforcement

20   Letter stated that neither Nationwide nor its affiliate, Loan Payment Administration, had obtained

21   a prorater license from the DBO. *Id*. In a subsequent email between an attorney for Nationwide a

22   deputy district attorney with the Monterey County District Attorney's Office, the deputy district

23   attorney stated that the DBO "has joined the prosecution team" and was "now a signatory on the

24

25   _____

26   [2] California law defines a prorater as a person "who, for compensation, engages in whole or in part
     in the business of receiving money or evidences thereof for the purpose of distributing the money

27   or evidences thereof among creditors in payment or partial payment of the obligations of the
     debtor." Cal. Fin. Code § 12002.1.

28

     Case No.: 14-CV-05166-LHK
     ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

1   tolling agreement" between Nationwide and the Monterey and Marin County District Attorneys'

2   Offices. ECF No. 5-1, at 18.

3          On October 21, 2014, Nationwide received a letter from the DBO. ECF No. 5-1, at 21. The

4   letter stated that it "serves to notify Nationwide that an investigation is currently underway by the

5   Department's Enforcement Division regarding possible unlicensed business activity by

6   Nationwide in California." *Id*. The letter requested that Nationwide make several disclosures,

7   including "[a] comprehensive description of all past and current services offered by Nationwide in

8   California," "[t]he dates that Nationwide has done business in California," and "[t]he revenue

9   generated by Nationwide by year since it has conducted business in California." *Id*. The letter

10  concluded by saying that the "above information is needed to begin the Department's review and

11  may not reflect the full extent of information that the Department may require in the future to

12  complete its investigation." *Id*.

13          **2.  Investigations of Nationwide in Other States**

14          Whether Nationwide conducts certain business activities without a license has been the

15  subject of investigations in states other than California. For instance, on October 21, 2011,

16  Nationwide entered into a consent order with the State of New Hampshire Banking Department.

17  ECF No. 32-2. That consent order provided, among other things, that "Nationwide has conducted

18  money transmitter activity for New Hampshire consumers without a valid Money Transmitter

19  license issued by the Department."[3] *Id*. at 3. Similarly on December 29, 2012, Nationwide entered

20  into a consent order with the Georgia Department of Banking and Finance. ECF No. 32-3. That

21  consent order provided that Nationwide "shall strictly comply with the terms of this Consent

22  Order, the Georgia Residential Mortgage Act, including but not limited to O.C.G.A. § 7-1-1002."

23  *Id*. at 2. Section 7-1-1002 prohibits, *inter alia*, "any person to transact business in this state

24  directly or indirectly as a mortgage broker, a mortgage lender, or a mortgage loan originator"

25

26  [3] New Hampshire law provides in relevant part that "[a]ny person [who] . . . in its own name or on
    behalf of other persons, transmits money from this state or to persons within this state, shall obtain
27  a license from the banking department." N.H. Rev. Stat. § 399-G:3.

                                                       4
28  Case No.: 14-CV-05166-LHK
    ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

*(left margin)* United States District Court
Northern District of California

1    without a license, or to "purchase, sell, or transfer one or more mortgage loans or loan

2    applications" from or to an unlicensed mortgage originator, broker, or lender. Ga. Code. § 7-1-

3    1002(a)-(b).

4         **B. Procedural History**

5         On November 21, 2014, Nationwide filed the instant lawsuit in this Court. *See* Compl.

6    Nationwide asserts four causes of action. First, Nationwide alleges that California Financial Code

7    § 12200.1, as applied to Nationwide, is *per se* invalid under the dormant Commerce Clause of the

8    U.S. Constitution because the statute "prevent[s] Nationwide from doing business in California

9    strictly on the basis of its incorporation outside the state of California." *Id*. ¶ 34. Second,

10   Nationwide alleges that enforcement of the state's prorater law against Nationwide would violate

11   Nationwide's right to substantive due process in violation of the Fourteenth Amendment of the

12   U.S. Constitution. *Id*. ¶ 39. Third, Nationwide alleges that the DBO's threatened enforcement of

13   the state prorater law against Nationwide would treat Nationwide differently from other similarly-

14   situated companies and therefore violates Nationwide's right to equal protection of the laws in

15   contravention of the Fourteenth Amendment of the U.S. Constitution. *Id*. ¶¶ 45-47. Fourth,

16   Nationwide alleges that the state's prorater law is unconstitutional because it is void for

17   vagueness. *Id*. ¶¶ 52-54.

18        Also on November 21, 2014, Nationwide filed the instant Motion. Nationwide argues that

19   it is entitled to a preliminary injunction based on its claim that Financial Code § 12200.1, as

20   applied to Nationwide, violates the dormant Commerce Clause of the U.S. Constitution. *See* Mot.

21   at 2. Nationwide also filed a supporting declaration with attached exhibits. ECF Nos. 5-1 & 5-2.

22        On January 9, 2015, Defendant filed an opposition, as well as a request for judicial notice.[4]

23

24   _____

     [4] On January 9, 2015, Defendant also filed evidentiary objections to statements in the declaration
25   of Daniel S. Lipsky in support of Nationwide's motion for preliminary injunction ("Lipsky
     Declaration"). ECF No. 33. Defendant objects to certain statements made in the Lipsky
26   Declaration on the grounds that they are hearsay, made without personal knowledge, or constitute
     improper opinion testimony, all in violation of the Federal Rules of Evidence. *Id*. at 2. In ruling on
27   a motion for preliminary injunction, a court may consider evidence that would normally be
     inadmissible. *See Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (in deciding

28

Case No.: 14-CV-05166-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
Northern District of California

1   ECF Nos. 31 ("Opp'n") & 32. On February 6, 2015, Nationwide filed a reply, as well as a

2   supporting declaration with attached exhibits. ECF Nos. 38 ("Reply"), 38-1 & 38-2.

3   ## II.  LEGAL STANDARD

4   Preliminary relief is an "extraordinary remedy that may only be awarded upon a clear

5   showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S.

6   7, 22 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to

7   succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary

8   relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."

9   *Id.* at 20. Where, as here, a "plaintiff seeks to enjoin the activity of a government agency . . . his

10  case must contend with the well-established rule that the Government has traditionally been

11  granted the widest latitude in the dispatch of its own internal affairs." *Rizzo v. Goode*, 423 U.S.

12  362, 378-79 (1976) (internal quotation marks omitted). The party seeking the injunction bears the

13  burden of proving the requisite elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th

14  Cir. 2009). The issuance of a preliminary injunction is at the discretion of the district court.

15  *Gibson v. Schwarzenegger*, 638 F.3d 1101, 1105 (9th Cir. 2010).

16  ## III. ANALYSIS

17  ### A.  Defendant's Request for Judicial Notice

18  The Court first addresses Defendant's request for judicial notice. ECF No. 32. In general, a

19  court may take judicial notice of matters that are either "generally known within the trial court's

20  territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy

21  cannot reasonably be questioned." Fed. R. Evid. 201(b). Matters which are appropriate subjects of

22  judicial notice include "matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 689

23  (9th Cir. 2001). Here, Defendant requests judicial notice of publicly-available court and consent

24  orders filed in Ohio, New Hampshire, Georgia, and Washington, as well as publicly-available

25  _____

26  motion for preliminary injunction, "[t]he trial court may give even inadmissible evidence some
    weight" because "[t]he urgency of obtaining a preliminary injunction . . . makes it difficult to

27  obtain affidavits from persons who would be competent to testify at trial."). Therefore, the Court
    DENIES Defendants' objections as moot.

28
Case No.: 14-CV-05166-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
Northern District of California

1    press releases issued by the Georgia Department of Banking and Finance and the Washington

2    State Department of Financial Institutions. ECF Nos. 32-1, 32-2, 32-3, & 32-4. These are matters

3    of public record, and Nationwide does not dispute their authenticity. In addition, Defendant

4    requests judicial notice of an order issued by the U.S. District Court, Eastern District of Michigan,

5    in *Quicken Loans, Inc. v. Nationwide Biweekly Administration, Inc., et al*., Case No. 13-13431.

6    ECF No. 32-5. Proper subjects of judicial notice include the orders of another court. *See Holder v.*

7    *Holder*, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial notice of opinion and briefs filed in

8    another proceeding). Accordingly, Defendant's request for judicial notice is GRANTED.

9        The Court now turns to Nationwide's Motion. The Court will address each required

10    element in turn. *See Winter*, 555 U.S. at 20 (a plaintiff seeking a preliminary injunction must

11    establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the

12    absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is

13    in the public interest).

14        **B.  Likelihood of Success on the Merits**

15        The Court first addresses whether Nationwide has demonstrated a likelihood of success on

16    the merits of Nationwide's dormant Commerce Clause claim. The Commerce Clause of the U.S.

17    Constitution provides: "The Congress shall have Power . . . [t]o regulate Commerce . . . among the

18    several States." U.S. Const. Art. I, § 8, cl. 3. The Supreme Court has interpreted the Commerce

19    Clause "to have a 'negative' aspect that denies the States the power unjustifiably to discriminate

20    against or burden the interstate flow of articles of commerce." *Or. Waste Sys., Inc. v. Dep't of*

21    *Envtl. Quality*, 511 U.S. 93, 98 (1994). "Courts have sometimes referred to this doctrine as the

22    'dormant Commerce Clause.'" *Black Star Farms LLC v. Oliver*, 600 F.3d 1225, 1230 (9th Cir.

23    2010) (quoting *United Haulers Ass'n v. Oneida–Herkimer Solid Waste Mgmt. Auth.*, 550 U.S.

24    330, 338 (2007)). Under the dormant Commerce Clause, a state may not impede the flow of goods

25    between the states and engage in "economic protectionism," which includes enacting regulations

26    "designed to benefit in-state economic interests by burdening out-of-state competitors." *New*

27

28

United States District Court
Northern District of California

7

Case No.: 14-CV-05166-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
Northern District of California

1    *Energy Co. v. Limbach*, 486 U.S. 269, 273 (1988). However, the dormant Commerce Clause does

2    not protect the particular structure or methods of operation in a retail market, nor does it protect

3    any particular interstate business. *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 127-28 (1978).

4         Two levels of scrutiny exist for analyzing statutes challenged under the dormant

5    Commerce Clause. *Maine v. Taylor*, 477 U.S. 131, 138 (1986). The higher level of scrutiny

6    applies to a statute that "discriminate[s] against interstate commerce 'either on its face or in

7    practical effect.'" *Id.* (quoting *Hughes v. Oklahoma*, 441 U.S. 322, 336 (1979)). For the purposes

8    of the dormant Commerce Clause analysis, "discrimination" means "differential treatment of in-

9    state and out-of-state economic interests that benefits the former and burdens the latter." *Or.*

10   *Waste*, 511 U.S. at 99. The "differential treatment" must be as between persons or entities who are

11   similarly situated. *See Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 298-99 (1997); *Nat'l Ass'n of*

12   *Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 525, 527 (9th Cir. 2009). A

13   court must analyze such a statute under the "strictest scrutiny." *Hughes*, 441 U.S. at 337. That is,

14   such a statute is unconstitutional unless it "'serves a legitimate local purpose,' and . . . this purpose

15   could not be served as well by available nondiscriminatory means." *Taylor*, 477 U.S. at 138

16   (quoting *Hughes*, 441 U.S. at 336). The party challenging the statute bears the burden of showing

17   discrimination. *Hughes*, 441 U.S. at 336. In its Motion, Nationwide argues that only this higher

18   level of scrutiny applies to the California statute at issue.[5] Mot. at 8-10.

19        **1.  Whether § 12200.1 Facially Discriminates Against Interstate Commerce**

20   _____

21   [5] A state law which does not discriminate against interstate commerce on its face or in practical
     effect may still violate the dormant Commerce Clause if the law fails the so-called *Pike* balancing

22   test. *See Pike v. Bruce Church*, 397 U.S. 137, 142 (1970). Under the *Pike* balancing test, a law that
     applies evenhandedly to in-state and out-of-state entities and only incidentally burdens interstate

23   commerce is valid unless it burdens commerce in a way that is "clearly excessive in relation to the
     putative local benefits" to be derived therefrom. *Id.* The party challenging the constitutionality of
     the statute has the burden of showing that the statute fails the *Pike* balancing test. *Kleenwell*

24   *Biohazard Waste & Gen. Ecology Consultants v. Nelson*, 48 F.3d 391, 399 (9th Cir. 1995). Here,
     Nationwide does not argue in the alternative that the *Pike* balancing test applies. *See* Mot. at 8-10

25   (arguing that the "higher level of scrutiny" in dormant Commerce Clause analysis "is relevant
     here"); Reply at 6 (arguing that Financial Code § 12200.1 is "*per se* invalid."). Because

26   Nationwide, as the party challenging the statute, would have the burden of establishing that the
     *Pike* balancing test weighs in Nationwide's favor, *see Nelson*, 48 F.3d at 399, the Court does not

27   address application of the *Pike* balancing test to Financial Code § 12200.1 at this time.

28
     8

1    Here, Nationwide challenges California Financial Code § 12200.1 on the grounds that it

2 violates the dormant Commerce Clause. Financial Code § 12200.1, which was enacted in 1955

3 and most recently amended in 1959, provides:

4    A license to engage in the business of selling checks, drafts, or
5    money orders, or of receiving money as agent of an obligor for the
     purpose of paying bills, invoices, or accounts of such obligor
6    (except a business agent or special prorater), or to accept, without
     direct compensation, money for the purpose of forwarding it to
7    others in payment of utility bills, shall only be issued to a
     corporation organized under the laws of this State for that purpose.

8 Cal. Fin. Code § 12200.1.

9    First, the Court examines Financial Code § 12200.1 to see whether it discriminates against

10 interstate commerce "on its face." *Taylor*, 477 U.S. at 138. To determine whether a regulation

11 facially discriminates against interstate commerce, a court looks to the regulation's language. *See*

12 *Birth Hope Adoption Agency v. Ariz. Health Care Costs Containment Sys.*, 218 F.3d 1040, 1044

13 (9th Cir. 2000) (analyzing language of statute to determine if it facially discriminates against

14 interstate commerce). A law which facially discriminates against interstate commerce is "virtually

15 per se" invalid. *Camps Newfound/Owatonna, Inc. v. Torn of Harrison, Me.*, 520 U.S. 564, 576

16 (1997); *see also Citicorp. Servs., Inc. v. Gillespie*, 712 F. Supp. 749, 751-55 (N.D. Cal. 1989)

17 (statutory scheme which provided that an escrow account could distribute proceeds of an in-state

18 check immediately upon deposit, but had to wait as long as seven days to distribute the proceeds

19 from an out-of-state check, facially discriminated against interstate commerce).

20    In its Motion, Nationwide argues that a state "'cannot require an out-of-state firm to

21 become a resident in order to compete on equal terms.'" Mot. at 9 (quoting *Granholm v. Heald*,

22 544 U.S. 460, 475 (2005)). Nationwide contends that because Financial Code § 12200.1 would

23 require Nationwide to re-incorporate in California, or open a subsidiary in California, to obtain a

24 prorater license, the statute facially discriminates against interstate commerce. *Id.*; Reply at 8-9.

25    Although the "Supreme Court has left unanswered the question of whether . . . a State

26 [may] require local incorporation as a condition of doing business in local markets," the Seventh

27

28

9

United States District Court
Northern District of California

1    Circuit in *Alliant Energy Corporation. v. Bie* addressed a statute analogous to the statute at issue

2    here. 330 F.3d 904, 915 (7th Cir. 2003). At issue in *Alliant Energy* was a Wisconsin law which

3    provided in relevant part that "[n]o license, permit or franchise to own, operate, manage or

4    control" a utility plant "may be granted or transferred to a foreign corporation." *Id*. at 908. The

5    statute effectively required an out-of-state corporation that wished to obtain a utility license in

6    Wisconsin to first incorporate an in-state subsidiary in order to apply for or obtain such a license.

7    *Id.* at 912. The Seventh Circuit held that this statute did not facially violate the dormant

8    Commerce Clause. *Id*. In so doing, the Seventh Circuit distinguished between the requirement that

9    an out-of-state corporation incorporate an in-state subsidiary to obtain a license, and another,

10   related statute which required that an out-of-state public utility holding company reincorporate its

11   *parent* corporation in Wisconsin. *Id*. The Seventh Circuit held that requiring a parent corporation

12   to reincorporate in-state facially violated the dormant Commerce Clause, because if every state

13   adopted such a rule it would effectively prohibit a corporation from owning a utility company in

14   more than one state and thereby adversely affect interstate commerce. *Id*. at 912. In contrast, the

15   Seventh Circuit found that merely requiring an out-of-state corporation to create an in-state

16   subsidiary "does not create this balkanization between the States" because "a foreign company

17   that wants to get involved in Wisconsin utility provision need only create a subsidiary and

18   incorporate it in Wisconsin." *Id*.

19        Here, similar to *Alliant Energy*, an out-of-state corporation could comply with Financial

20   Code § 12200.1 by incorporating an in-state subsidiary to apply for a prorater license. *See* Cal.

21   Fin. Code § 12200.1; Opp'n at 7 (noting that an out-of-state entity, like an in-state entity, could

22   comply with Financial Code § 12200.1 by "form[ing] a subsidiary under California law for the

23   purpose of being a prorater, and thus would be able to apply for a license under Section

24   12200.1."). The requirement that a corporation create an in-state subsidiary to apply for a license

25   to do business in the state is commensurate with the general rule that states may require a person

26   or company to obtain a license to do business in-state without violating the dormant Commerce

27

28
Case No.: 14-CV-05166-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
Northern District of California

Clause. *See, e.g.*, *Ctr. for Legal Studies, Inc. v. Lindley*, 1 Fed. App'x 662, 664-65 (9th Cir. 2001) (Oregon statute which required that a person may not open, conduct, or do business as a career school in the state without first obtaining a license did not violate dormant Commerce Clause). States may similarly limit the types of entities eligible to receive a license without violating the dormant Commerce Clause. *See, e.g.*, *Brown v. Hovatter*, 561 F.3d 357, 363-68 (4th Cir. 2009) (Maryland statute which prohibited corporations from obtaining a mortician license did not violate the dormant Commerce Clause). Accordingly, Nationwide has not shown it is likely to succeed on the merits of its dormant Commerce Clause claim simply because Financial Code § 12200.1 restricts prorater licenses to, *inter alia*, corporations that have in-state subsidiaries.

Nationwide has also not shown a likelihood of success on the merits for the additional reason that Financial Code § 12200.1 facially treats in-state and out-of-state persons or corporations the same. For a statute to discriminate against interstate commerce, it must result in "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Or. Waste*, 511 U.S. at 99. To determine whether a statute results in "differential treatment," the statute must treat "similarly situated" entities or persons differently. *Black Star*, 600 F.3d at 1230. According to the plain language of Financial Code § 12200.1, a license to engage in the business of, *inter alia*, "receiving money as agent of an obligor for the purpose of paying bills, invoices, or accounts of such obligor" may only be issued to a "corporation organized under the laws of this State for that purpose." Cal. Fin. Code § 12200.1. Put another way, any company, regardless of where that company is based, that wishes to apply for a prorater license must first organize a corporation or subsidiary that has the purpose of being a prorater under the laws of California. *See id.* "[A] statute that treats all private companies exactly the same does not discriminate against interstate commerce." *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 948 (9th Cir. 2013) (internal quotation marks and alterations omitted). Therefore, Financial Code § 12200.1 does not, on its face, appear to discriminate against interstate commerce.

Case No.: 14-CV-05166-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

1       Nationwide cites no case that holds a statute requiring an out-of-state corporation to

2    incorporate an in-state subsidiary for the purpose of obtaining a business license facially violates

3    the dormant Commerce Clause. Moreover, the cases that Nationwide cites in support of its

4    argument are distinguishable. At issue in *Lewis v. BT Investment Managers, Inc.* was a Florida

5    statute which categorically prohibited an out-of-state bank holding company from owning or

6    controlling a business within the state that sold investment advisory services to any customer. 447

7    U.S. 27, 31-32 (1980). In that case, there was also evidence in the record that the Florida

8    legislature passed the statute specifically in response to an out-of-state bank qualifying to do

9    business in the state. *Id*. The U.S. Supreme Court held that the statute violated the dormant

10   Commerce Clause because the only businesses affected were "banks, bank holding companies,

11   and trust companies with principal operations *outside* Florida." *Id*. at 42 (emphasis in original).

12   Here, in contrast, by its plain terms Financial Code § 12200.1 mandates that *both* businesses

13   outside and inside California which do not have a prorater license but wish to obtain one must first

14   organize a corporation or subsidiary for the purpose of obtaining a prorater license, and do so

15   under state law. Cal. Fin. Code § 12200.1.

16       Similarly, at issue in *Granholm v. Heald* was a New York statutory scheme that (1)

17   required out-of-state wineries that wished to ship product directly to consumers to open physical

18   distribution operations in-state, (2) denied out-of-state wineries a certain license that provided the

19   most direct means of shipping product to in-state consumers, and (3) barred out-of-state wineries

20   that did not have direct shipping licenses to distribute product through other licensed wineries, a

21   privilege given to in-state wineries. 544 U.S. at 473-76. Given this statutory scheme, the U.S.

22   Supreme Court had "no difficulty" in concluding that it "discriminates against interstate

23   commerce." *Id*. at 476. In other words, what was dispositive in *Granholm* was the fact that the

24   statutory scheme at issue "in effect allowed only in-state wineries, to the exclusion of *all* out-of-

25   state wineries, to bypass the states' three-tiered distribution system and ship directly to

26   consumers." *Black Star*, 600 F.3d at 1234 (internal quotation marks omitted). Here, again,

27

28

United States District Court
Northern District of California

12

Case No.: 14-CV-05166-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

1    Financial Code § 12200.1 treats in-state and out-of-state corporations equally by requiring them to

2    organize a corporation or subsidiary for the purpose of obtaining a prorater license, and to do so

3    under state law. Cal. Fin. Code § 12200.1. Because "the statute . . . treats all private companies

4    exactly the same," it "does not discriminate against interstate commerce." *Harris*, 729 F.3d at 948.

5         In its reply, Nationwide for the first time cites to *Tri-M Group, LLC v. Sharp*, 638 F.3d 406

6    (3d Cir. 2011). At issue in *Tri-M* was a Delaware law which required out-of-state contractors to

7    maintain a place of business in Delaware "that is not a site, trailer, temporary structure, or post

8    office box" in order to take advantage of favorable wage laws. *Id*. at 427. The law at issue

9    inherently favored in-state contractors or those that already "possess[ed] a permanent place of

10   business in Delaware." *Id*. at 427. The *Tri-M* court ultimately affirmed the district court's holding

11   that the statute violated the dormant Commerce Clause. *See id*. at 428. However, the *Tri-M* court

12   based its holding in part on the fact that there was evidence in the record that the Delaware statute

13   was passed for the explicit purpose of protecting local economic interests to the detriment of out-

14   of-state ones. *Id*. at 428-29. Specifically, the *Tri-M* court found that "[t]he evidence and testimony

15   adduced by the parties demonstrated the retaliatory motivations underlying the amendment of the

16   Delaware regulations in 1999 to include the permanent place of business requirement. . . . As the

17   District Court discussed, the State added the discriminatory residency requirement to the

18   regulatory regime in response to similar legislative enactments by Pennsylvania and Maryland."

19   Therefore, the *Tri-M* court found that the plaintiff challenging the statute showed the statute had a

20   "discriminatory design or effect," which triggered strict scrutiny. *Id*. at 428. Here, in contrast,

21   Nationwide has not adduced any evidence of a "discriminatory design or effect" behind Financial

22   Code § 12200.1.

23        For the reasons stated above, the Court concludes that Nationwide has not carried its

24   burden to show that Nationwide is likely to succeed on the merits of its claim that Financial Code

25   § 12200.1 facially discriminates against interstate commerce. *See Hughes*, 441 U.S. at 336 (party

26   challenging the statute bears the burden of showing discrimination).

27        **2.   Whether the Practical Effect of § 12200.1 is to Discriminate Against Interstate**

28

13

Case No.: 14-CV-05166-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
Northern District of California

Commerce

If a statute does not discriminate against interstate commerce on its face, the statute may still run afoul of the dormant Commerce Clause if it discriminates against interstate commerce "in practical effect." *Hughes*, 441 U.S. at 138. To determine whether the "practical effect" of a regulation is that it discriminates against interstate commerce, a court considers "the direct consequences of the statute itself." *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1101 (9th Cir. 2013); *Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989) (the "critical inquiry is whether the practical effect of the regulation is to control conduct beyond the boundary of the State."). Again, the party challenging the statute bears the burden of showing discrimination based on practical effect. *Hughes*, 441 U.S. at 336.

Here, the only argument Nationwide appears to make that the practical effect of Financial Code § 12200.1 is to discriminate against interstate commerce is that the statute categorically bars Nationwide from obtaining a prorater license because of Nationwide's status as an out-of-state corporation. *See* Mot. at 1 ("Nationwide has always been statutorily prohibited from obtaining a prorater license, which is available only to California corporations"). However, as Defendant notes in its opposition, Nationwide could form a California subsidiary and thereby apply for a license pursuant to Financial Code § 12200.1. Opp'n at 7. The fact that Nationwide would have to incorporate a California subsidiary to obtain a prorater license does not, on its own, show that Financial Code § 12200.1 discriminates against interstate commerce in practical effect. *See Alliant Energy*, 330 F.3d at 915-16 (statute which restricted the granting of licenses, permits, or franchises to own or operate utility businesses to in-state corporations, or in-state subsidiaries of out-of-state corporations, did not violate dormant Commerce Clause).

In its Reply, Nationwide argues that having to form a California subsidiary "would impose significant burdens on Nationwide." Reply at 8-9. However, to show that a statute's practical effect is to discriminate against interstate commerce, the challenging party must adduce "substantial evidence" that the law has an "actual discriminatory effect" on interstate commerce. *Rocky Mountain*, 730 F.3d at 1100. "[D]iscrimination" in the context of a dormant Commerce

14

1    Clause challenge means "differential treatment of in-state and out-of-state economic interests that

2    benefits the former and burdens the latter." *Or. Waste*, 511 U.S. at 99. Accordingly, substantial

3    evidence of a discriminatory effect may consist of evidence that a law erects barriers to entry "that

4    in effect creates a burden that alters the proportional share of the [relevant] market in favor of in-

5    state [businesses]," or that the law has an "effect on the flow of interstate commerce," or that the

6    law "creates a system under which local goods constitute a larger share, and goods with an out-of-

7    state source constitute a smaller share, of the total sales in the market." *Black Star*, 600 F.3d at

8    1231. At this stage of the litigation, Nationwide has not adduced "substantial evidence"—or any

9    evidence—that Financial Code § 12200.1 "alters the proportional share" of the prorater market in

10   favor of in-state economic interests, or that the law creates a system whereby local proraters

11   constitute a larger share of the market than proraters with their principle place of business outside

12   of the state. *See id.* Accordingly, Nationwide has not adduced the substantial evidence required to

13   show that the practical effect of Financial Code § 12200.1 is to discriminate against interstate

14   commerce.

15         In sum, at this juncture Nationwide has not satisfied its burden to show that Nationwide is

16   likely to succeed on the merits of its claim that Financial Code § 12200.1 has an actual

17   discriminatory effect on interstate commerce. *See Hughes*, 441 U.S. at 336 (party challenging the

18   statute bears the burden of showing discrimination based). Moreover, because Nationwide has also

19   not shown that Financial Code § 12200.1 discriminates against interstate commerce on its face,

20   Nationwide has not shown that it is likely to succeed on the merits of its dormant Commerce

21   Clause claim. *Winter*, 555 U.S. at 22 (a party seeking a preliminary injunction must establish, *inter*

22   *alia*, "that he is likely to succeed on the merits").

23         **C.  Likelihood of Suffering Irreparable Harm**

24         A party seeking a preliminary injunction must also establish that "he is likely to suffer

25   irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20. "Speculative injury

26   does not constitute irreparable injury sufficient to warrant granting a preliminary injunction."

27

28

United States District Court
Northern District of California

15

Case No.: 14-CV-05166-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

1    *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984). Rather, "a plaintiff

2    must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief."

3    *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis omitted).

4    Where, as here, a plaintiff seeks an injunction against a state, "[t]he U.S. Supreme Court has

5    repeatedly cautioned that, absent a threat of immediate and irreparable harm, the federal courts

6    should not enjoin a state to conduct its business in a particular way." *Hodgers-Durgin v. de la*

7    *Vina*, 199 F.3d 1037, 1042 (9th Cir. 1999).

8         Here, Nationwide argues it has shown that it is likely that Nationwide will suffer

9    irreparable harm absent injunctive relief because Nationwide "has demonstrated a likely

10   deprivation of constitutional rights." Mot. at 11. However, because the Court herein concludes that

11   Nationwide has not carried its burden to show a likelihood of success on the merits of

12   Nationwide's dormant Commerce Clause claim, the Court accords this argument little weight. *See*

13   *Dex Media W., Inc. v. City of Seattle*, 790 F. Supp. 2d 1276, 1289 (W.D. Wash. 2011) ("Because

14   the court finds that Plaintiffs have failed to establish that they are likely to succeed on the merits of

15   their [constitutional] claim . . . the court cannot find that Plaintiffs have established that they are

16   likely to suffer irreparable [constitutional] injury in the absence of a preliminary injunction.").

17        Nationwide also argues that it is likely Nationwide will suffer irreparable injury because

18   the DBO is "likely" to issue a "cease and desist" order which "would end Nationwide's entire

19   business in California." Mot. at 11. Nationwide contends this is the case because a cease and desist

20   order from the DBO would, among other things, jeopardize Nationwide's relationships with its

21   banking partners, could lead to regulators in other states suspending or revoking Nationwide's

22   licenses to operate there, and lead to consumers demanding refunds from Nationwide. Declaration

23   of Daniel S. Lipsky in Support of Motion for Preliminary Injunction ("Lipsky Decl."), ECF No. 5-

24   1, ¶ 23. However, Nationwide's statement that the DBO is "likely" to issue a "cease and desist"

25   order is unsupported by the evidence. Correspondence between Nationwide and the DBO does not

26   mention the possibility of a cease-and-desist order. *See* ECF No. 5-1, at 21 (October 21, 2014

27

28

Case No.: 14-CV-05166-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
Northern District of California

1    letter from the DBO to Nationwide "notify[ing] Nationwide that an investigation is currently

2    underway" and requesting information from Nationwide). Indeed, according to the Defendant, the

3    DBO's investigation of Nationwide has not yet concluded, and therefore the DBO has not yet

4    decided whether to take any action against Nationwide. Opp'n at 3-4. The fact that the DBO's

5    investigation is ongoing and that the agency has not yet made a determination as to Nationwide's

6    conduct weighs against finding irreparable harm. *See Ctr. for Food Safety v. Vilsack*, 636 F.3d

7    1166, 1174 (9th Cir. 2011) (plaintiff failed to show irreparable harm where such harm "hinged on

8    future . . . decision" of an administrative agency); *Baldrige*, 844 F.2d at 674 (plaintiff seeking

9    preliminary injunction "must demonstrate *immediate* threatened injury as a prerequisite")

10   (emphasis added).

11        Moreover, even if the DBO takes action against Nationwide, such action need not take the

12   form of a cease-and-desist order. For instance, the DBO could issue a written citation without a

13   cease and desist order. *See* Cal. Fin. Code § 12107 (if party is found to be engaging in business

14   without a license, the DBO "may issue a citation to that person in writing describing with

15   particularity the basis of the citation," which "*may* contain an order to desist and refrain")

16   (emphasis added). The DBO could also file a civil enforcement action pursuant to Financial Code

17   § 12105, which does not provide for a cease and desist order. *See* Cal. Fin. Code § 12105

18   (providing that penalties for a civil enforcement action include, *inter alia*, disgorgement,

19   restitution, or damages). Given that the DBO could choose among alternative means of

20   enforcement, Nationwide offers no evidence to explain why it is "likely" the DBO would issue a

21   cease-and-desist order.

22        Where a party seeking a preliminary injunction fails to put forward "credible evidence" of

23   irreparable injury, that party fails to carry its burden. *See, e.g.*, *Dotster, Inc. v. Internet Corp. For

24   Assigned Names & Numbers*, 296 F. Supp. 2d 1159, 1163-64 (C.D. Cal. 2003) ("Although the loss

25   of goodwill and reputation are important considerations in determining the existence of irreparable

26   injury, there must be credible . . . evidence that such damage threatens Plaintiffs' businesses with

27

28

Case No.: 14-CV-05166-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
Northern District of California

1    termination."). Here, Nationwide's claim that the DBO is "likely" to issue a cease and desist order

2    is a speculative assertion unsupported by credible evidence, and "[s]peculative injury does not

3    constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Goldie's*

4    *Bookstore*, 739 F.2d at 472.

5            Finally, Nationwide's argument that it is likely to suffer irreparable harm absent injunctive

6    relief is not persuasive for the additional reason that Nationwide has previously entered into

7    consent orders with enforcement agencies of other states without an apparent adverse impact on

8    Nationwide's business. For instance, on October 21, 2011, Nationwide entered into a consent

9    order with the State of New Hampshire Banking Department that stated "Nationwide has

10   conducted money transmitter activity for New Hampshire consumers without a valid Money

11   Transmitter license." ECF No. 32-2, at 3. Similarly, on December 29, 2012, Nationwide entered

12   into a consent order with the Georgia Department of Banking and Finance that provided that

13   Nationwide shall "strictly comply" with Georgia law that prohibited any person to transact

14   business directly or indirectly as a mortgage broker, lender, or loan originator without a license.

15   ECF No. 32-3, at 2. The fact that Nationwide was the subject of these consent orders without an

16   apparent adverse effect on Nationwide's relationship with its banking partners, regulators, and

17   customers undermines Nationwide's argument that a possible enforcement action by the DBO

18   could destroy those relationships here. *See* Lipsky Decl. ¶ 23.

19           For the reasons stated above, the Court concludes that Nationwide has not demonstrated a

20   likelihood of irreparable harm such that a preliminary injunction is warranted.[6] *Winter*, 555 U.S. at

21

22   _____

23   [6] In Defendant's opposition, Defendant contends that Nationwide has not shown it is likely to
     suffer irreparable harm for the additional reason that Nationwide has not demonstrated that
     Nationwide has Article III standing or that its claim is ripe. *See* Opp'n at 12-19. Defendant has
24   raised a similar argument in Defendant's pending motion to dismiss, which is set for hearing on
     April 16, 2015. *See* ECF No. 30. Because the Court determines that Nationwide's injury is too
25   speculative to warrant injunctive relief, the Court does not address Defendant's argument in the
     alternative at this time. *See Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1044 (9th Cir. 1999)
26   (finding that plaintiffs' claimed injury was too speculative to warrant injunctive or declaratory
     relief, and therefore not reaching "whether plaintiffs' declaratory relief claim is ripe in the Article
27   III sense.").

28   Case No.: 14-CV-05166-LHK
     ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
Northern District of California

18

1 || 20.

2 || **D.  Balance of the Equities and the Public Interest**

3 ||     With respect to the balance of the equities and the public interest, these two factors merge

4 || into one inquiry—whether an injunction is in the public interest—where, as here, the government

5 || is the opposing party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2013); *Nken*

6 || *v. Holder*, 556 U.S. 418, 435-36 (2009). Again, the party seeking the injunction bears the burden

7 || of proving the requisite elements. *Klein*, 584 F.3d at 1201

8 ||     Here, the only argument Nationwide advances as to why an injunction would be in the

9 || public interest is that the "Defendant's threatened enforcement of the Prorater Law violates

10 || Nationwide's constitutional rights." Mot. at 12. However, where a plaintiff has not shown a

11 || likelihood of success on the merits of his constitutional claim, this fact weighs against finding the

12 || public interest favors an injunction. *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005).

13 || Furthermore, in addressing whether an injunction is in the public interest, a court looks to the

14 || impact an injunction would have on non-parties. *Sammartano v. First Judicial Dist. Court, Cnty.*

15 || *of Carson City*, 303 F.3d 959, 974 (9th Cir. 2002), *abrogated in part on other grounds by Winter*,

16 || 555 U.S. at 24. Here, an injunction would essentially permit Nationwide "to evade the [prorater

17 || law's] salutary requirement of subjecting [Nationwide's] practices to defendant's licensing

18 || oversight for the protection of consumers." *Nationwide Asset Servs., Inc. v. DuFauchard*, 164 Cal.

19 || App. 4th 1121, 1126 (2008) (describing Financial Code § 12200 *et seq.*). Enjoining enforcement

20 || of a statute that has the goal of "protection of consumers" would not be in the public interest.

21 || Accordingly, Nationwide has not carried its burden to show that issuing an injunction would be in

22 || the public interest.

23 || **IV. CONCLUSION**

24 ||     For the reasons stated above, Nationwide's Motion is DENIED.

25 ||

26 ||

27 ||

28 ||

19

Case No.: 14-CV-05166-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

United States District Court
Northern District of California

1    **IT IS SO ORDERED.**

2    Dated: March 18, 2015

3    _____

4    LUCY H. KOH
     United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.: 14-CV-05166-LHK
ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION