SEAN E. PONIST (SBN 204712)
sponist@ponistlaw.com
**LAW OFFICES OF SEAN PONIST, P.C.**
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 798-2222
Fax: (888) 350-5442

GLENN V. WHITAKER (admitted *pro hac vice*)
gvwhitaker@vorys.com
ERIC W. RICHARDSON (admitted *pro hac vice*)
ewrichardson@vorys.com
NATHAN L. COLVIN (admitted *pro hac vice*)
nlcolvin@vorys.com
**VORYS, SATER, SEYMOUR AND PEASE LLP**
301 East Fourth Street
Suite 3500, Great American Tower
Cincinnati, OH 45202
Telephone: (513) 723-4000
Fax: (513) 852-8450

*Attorneys for Plaintiff Nationwide Biweekly Administration, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONWIDE BIWEEKLY ADMINISTRATION, INC., an Ohio corporation,<br><br>Plaintiff,<br><br>vs.<br><br>JAN LYNN OWEN, in her official capacity as Commissioner of the Department of Business Oversight for the State of California,<br><br>Defendant. | Case No. 14-cv-05166-LHK<br><br>**PLAINTIFF'S SUPPLEMENTAL BREIF IN OPPOSITION TO MOTION TO DISMISS**<br><br>Date: June 25, 2015<br>Time: 1:30 P.M.<br>Courtroom: 8<br>Judge: The Honorable Lucy H. Koh<br>Complaint Filed: November 21, 2014 |

## INTRODUCTION

DBO's Supplemental Brief presents the question of whether a defendant may disingenuously shift its positions to suit the exigencies of the moment. For months, DBO threatened Nationwide with enforcement of the Prorater Law. But after Nationwide filed suit, DBO reversed course, repeatedly insisting to this Court that Nationwide lacked standing because there was no threat of enforcement. Then, after Nationwide filed its appellate brief, DBO reverted to its original position and filed the "non-imminent" State Case enforcing the Prorater Law. The purpose of this most recent reversal is to have this case dismissed on *Younger* abstention grounds. But this gamesmanship comes too late. *Younger* abstention is inappropriate because this case—which is on appeal—has advanced well beyond the "embryonic" stage. Moreover, exceptions to *Younger* apply because DBO brought the State Case in bad faith, and this case presents a patent constitutional violation. The Court should deny the Motion.

## FACTUAL BACKGROUND

On May 22, 2014, DBO "joined the prosecution team" and informed Nationwide that DBO would "be a party to the judgment, stipulated or litigated" sought as to Nationwide's alleged violation of the Prorater Law. (Doc. 5-1, Lipsky Decl. ¶ 18.) On July 24, 2014, and again on August 26, 2014, the Prosecution Team demanded that Nationwide enter into a stipulated judgment that included "permanent injunctive relief, consumer restitution and civil penalties." (Doc. 38-1, 2nd Lipsky Decl. ¶¶ 4-5.) On October 1, 2010, the Prosecution Team cut off negotiations and asked Nationwide's counsel if it would accept service of process. (*Id*. ¶ 6.)

Facing this imminent enforcement of the Prorater Law, Nationwide was compelled to file this lawsuit. DBO responded with an about face, repeatedly representing to this Court that there was no credible threat of enforcement of the Prorater Law against Nationwide:

- January 9, 2015, Mot. to Dismiss, p. 5 (arguing that Nationwide lacks standing and its claims are not ripe because DBO is still investigating and there is no credible threat of enforcement).
- January 9, 2015, Opp. to Prelim. Inj., pp. 13-14 (arguing that Nationwide's allegation that DBO threatened enforcement is "purely speculative" and thus Nationwide had failed to demonstrate standing, ripeness, or that it will suffer imminent harm).
- February 26, 2015, Reply ISO Mot. to Dismiss, pp. 2-4 (arguing that the threat of prosecution alleged by Nationwide was "purely speculative" and thus Nationwide lacked standing).

Then, out of the blue, and without withdrawing these arguments, DBO reverted to its original position, made good on its threats, and filed the State Case enforcing the Prorater Law on May 15, 2015.

## ARGUMENT

### I. Federal Courts Have a Virtually Unflagging Obligation to Decide Constitutional Claims

DBO accuses Nationwide of attempting "to derail the state court enforcement action." (Supp. Br. p. 1.) This statement ignores that this suit was filed first and fails to recognize the most basic precepts of federal law. Federal courts can "vindicate federal rights and hold state officials responsible to the supreme authority of the United States," including by enjoining the unconstitutional enforcement of a statute. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 105 (1984); *see also Babbitt v. United Farm Workers Nat'l*, 442 U.S. 289, 298 (1979) (a court may enjoin unconstitutional enforcement of a law where "there exists a credible threat of prosecution thereunder."). Where such jurisdiction exists, "a federal court's obligation to hear and decide a case is virtually unflagging." *Sprint Communs., Inc. v. Jacobs*, 134 S. Ct. 584 (2013) (citation and internal quotation marks omitted).

*Younger* represents a narrow exception that applies **only** when state proceedings have been initiated "**before** any proceedings of substance on the merits have taken place in federal court." *Hicks v. Miranda*, 422 U.S. 332, 349 (1975) (emphasis added). But once the federal case have moved beyond an "embryonic stage," as here, *Younger* is no longer applicable. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 929 (1975).

### II. This Case Has Proceeded Beyond the Embryonic Stage

To determine if a case has advanced beyond an embryonic stage, federal courts look to whether a party has "begun actively litigating its position in federal court." *For Your Eyes Alone, Inc. v. City of Columbus*, 281 F.3d 1209, 1218 (11th Cir. 2002). For example, a case has "progressed beyond an embryonic stage" when it "had begun nearly six months before the commencement of criminal proceedings in state court" and, in the meantime, the court had denied a TRO. *See Hoye v. City of Oakland*, 653 F.3d 835, 844 (9th Cir. 2011). Similarly, substantive proceedings have occurred where the district court held an evidentiary hearing—but denied—a motion for a preliminary injunction. *See*

*Adultworld Bookstore v. Fresno* 758 F.2d 1348, 1350-51 (9th Cir. 1985).[1]  Looking to the facts of this case, it is clear that more proceedings of substance have occurred here than in *Hoye* and *Adultworld*.

Specifically, this case has been pending for slightly longer than the "nearly six months." *Hoye*, 653 F.3d at 844.  Moreover, the following actions took place before the State Case was filed:

1. The Parties submitted evidence and fully briefed Nationwide's Motion for Preliminary Injunction.
2. The Parties fully briefed DBO's Motion to Dismiss for Failure to State a Claim.
3. The Court considered the **merits and evidence**, and then issued a substantive decision on Nationwide's Motion for a Preliminary Injunction.
4. The Parties submitted a Joint Case Management Statement.
5. Nationwide filed its opening brief in the Ninth Circuit.

These 5 actions (among others) are substantively and numerically greater than the actions in *Hoye* and *Adultworld*, rendering *Younger* abstention inappropriate.

### A.  DBO's Cases are Inapposite and its Position Would Encourage Gamesmanship

Notably, DBO cannot identify **a single case** finding *Younger* abstention appropriate when the state case commenced **after** an appeal was underway.  Instead, DBO relies on several distinguishable cases.  In *Hicks*, the state criminal proceeding commenced just **1 day** after the federal complaint was served and the court had denied a **temporary restraining order** (that was heard without notice to the defendants).  *See* 422 U.S. at 349.  In *Polykoff v. Collins*, the Ninth Circuit found that the case had not proceeded beyond the embryonic stage when the *Younger* motion was filed **before** the motion for preliminary injunction was decided, and just **13 days** after the federal suit was filed.  *See* 816 F.2d 1326, 1332 (9th Cir. 1987).  And, unlike here, in *Forty One News, Inc. v. Cnty of Lake* "[t]he parties ha[d] not briefed and the court did not consider any issue related to the merits."  491 F.3d 662, 666 (7th Cir. 2007).  Rather, the district court had only considered res judicata and *Younger* arguments that were raised **after** the government **prevailed in the state action**.  *See id* at 666-67 (explaining that the district court did not make "a decision relating to the underlying issue in the case—the constitutionality of the ordinance.").

---

[1] *See also Merck Sharp & Dohme Corp. v. Conway*, 909 F. Supp. 2d 781, 789 (E.D. Ky. 2012) (*Younger* abstention inappropriate where "the federal action had been pending for seven months" and "two important motions were fully briefed and ripe for adjudication."); *Cottonwood Christian Ctr. v. Cypress Redevelopment Agency*, 218 F. Supp. 2d 1023, 1218 & n. 6 (C.D. Cal. 2002) (*Younger* abstention inappropriate where the state proceedings were commenced four months after the federal action was filed, and after the defendants had filed a motion to dismiss); *B.A.P., Inc. v. McCulloch*, 994 F. Supp. 1131, 1137 (E.D. Mo. 1998) (*Younger* abstention inapplicable where the state action "was not filed until after plaintiff filed this federal action and received a hearing date.").

Moreover, DBO's myopic focus on this Court's denial of a preliminary injunction, rather than the extensive procedural history of this case, should be rejected because it would encourage state defendants to engage in gamesmanship. *See For Your Eyes Alone*, 281 F.2d at 1219 ("[I]f we define too narrowly what constitutes proceedings of substance on the merits, we risk vesting the district attorneys—not the aggrieved citizen—with the power to choose the forum, and, indeed, the nature of the proceeding in which the federal constitutional claim [will] be litigated."); *see also Merck*, 909 F. Supp. 2d at 789 (explaining that *Hicks* "should not be applied in so rigid a fashion that it would encourage gamesmanship on the part of the federal defendant.").

The potential for gamesmanship is illustrated here. Up until the day it filed the State Case, DBO actively litigated this position: "Nationwide prematurely filed this action against the Commissioner, based on its fears and speculation regarding the outcome of the DBO's on-going investigation. Because the Commissioner has not yet acted, however, Nationwide has no standing to complain, nor has a ripe controversy arisen between the two parties." (Doc. 30, Mot. to Dismiss, p. 5.) The Court adopted this position in its Order Denying the Preliminary Injunction. (Doc. 45, p. 17 (finding that DBO's ongoing investigation weighs against finding irreparable harm).) Then, on April 13, 2015, the Court informed the Parties that it was ready to decide the Motion to Dismiss, which presented the same issue. (Doc. 51.) Knowing that the Court's decision was forthcoming, DBO was **obligated** to withdraw this argument or otherwise inform the Court that its position had changed and that it planned to file a 29-page complaint against Nationwide. DBO failed to do so. Instead, buoyed by the Court's prior adoption of its argument, DBO sat on its hands, waiting to see if the Court would grant its Motion.

Then, Nationwide filed its opening appellate brief, which raises serious questions about the rationale underpinning this Court's preliminary injunction decision. It is at this point (it seems) that DBO decided it could not wait any longer to file the State Case so it could make this *Younger* argument. Nonetheless, DBO continued to represent that no enforcement was imminent, seeking an extension to file its appellee brief just 10 days before filing the State Case:

> Our response brief is due on May 15, 2015. However, we need to request an extension of time to file the brief. **The reason is because** it is a 9th Circuit brief regarding a state agency, there are several layers or review, including by our Solicitor General and review by the Governor's office.

(Exhibit 1 (emphasis added).)  As it turns out, DBO never filed the promised appellee brief and, instead, used this time to surreptitiously finalize and file the State Case (which was filed on the same day DBO's appellee brief was initially due).

Tellingly, DBO does not explain why it waited so long to file the State Case, or why it failed to withdraw its standing and ripeness arguments **prior** to filing the State Case.  But even if the Court does not agree that this fact pattern creates an inference of gamesmanship, the application of *Younger* under these circumstances would clearly permit future government defendants to engage in gamesmanship, actively litigating a case until the forum is no longer viewed favorably.  This would undermine the "carefully defined *Younger* abstention to mandatory federal jurisdiction."  *Hoye*, 653 F.3d at 844.

### III.    Exceptions to *Younger* Apply

Even where the elements for *Younger* abstention are met, courts must consider whether an exception applies, including whether the state case was brought in bad faith.  *See Younger*, 401 U.S. at 48-50.  Here, there is a strong inference that the State Case was brought in bad faith to prevent Nationwide from vindicating its constitutional rights in this Court.  DBO's motion should be denied to permit Nationwide to conduct discovery on DBO's motives for waiting to file the State Case and failing to withdraw its standing arguments.  *See Chiropractic Alliance v. Parisi*, 854 F. Supp. 299, 307 (D.N.J. 1994) (finding *Younger* inappropriate where "the Court cannot conclusively determine at this stage of litigation whether or not subsequent discovery in this case will bear out the allegations of bad faith.").

This Court should also deny the motion because this case presents a patent constitutional violation.  *See Elder v. Broddrick*, 2006 U.S. Dist. LEXIS 93233, *13 (N.D. Cal. Dec. 11, 2006).  Under clear precedent, the Prorater Law violates the dormant Commerce Clause by requiring "an out-of-state firm to become a resident in order to compete on equal terms."  *Granholm v. Heald*, 544 U.S. 460, 475 (2005).  Although the Court disagreed with this argument, Nationwide respectfully submits that the Prorater Law patently violates the dormant Commerce Clause, and that the Court erred in its reliance on *Alliant Energy Corp. v. Bie* (as is explained more fully in the appellate brief attached hereto as Exhibit 2).

### CONCLUSION

For these reasons, Nationwide's respectfully requests that this Court deny DBO's Second Motion to Dismiss.

| | |
|---|---|
| 1  Dated:  June 10, 2015 | LAW OFFICES OF SEAN PONIST, P.C.<br>SEAN E. PONIST |
| | VORYS, SATER, SEYMOUR AND PEASE LLP<br>GLENN V. WHITAKER<br>ERIC W. RICHARDSON<br>NATHAN L. COLVIN |
| | By:   /s/ Glenn V. Whitaker<br>        Glenn V. Whitaker |
| | ***Attorneys for Plaintiff Nationwide Biweekly, Inc.*** |

## CERTIFICATE OF SERVICE

On June 10, 2015, I filed the foregoing document with the Court's CM/ECF filing system, which will serve all parties and counsel of record in this case.

                                         /s/ Glenn V. Whitaker
                                        Glenn V. Whitaker

SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION TO DISMISS