UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NATIONWIDE BIWEEKLY ADMINISTRATION, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>JAN LYNN OWEN,<br><br>Defendant. | Case No. 14-CV-05166-LHK<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 30, 55 |

Before the Court is a motion to dismiss filed by Defendant Jan Owen ("Defendant"), in her official capacity as Commissioner of the Department of Business Oversight for the State of California ("DBO"). ECF No. 30 ("Motion"); ECF No. 55 ("Supplemental Brief"). Defendant requests that the Court dismiss Plaintiff Nationwide Biweekly Administration, Inc.'s ("Plaintiff" or "Nationwide") complaint pursuant to Federal Rule of Civil Procedure 12.

The Court finds this matter suitable for decision without oral argument under Civil Local Rule 7-1(b) and hereby vacates the motion hearing set for June 25, 2015, at 1:30 p.m. Having considered the submissions of the parties, the record in this case, and the relevant law, the Court hereby GRANTS Defendant's Motion, for the reasons stated herein.

**I. BACKGROUND**

### A.     Factual Background

Nationwide is an Ohio corporation with its headquarters in Xenia, Ohio. ECF No. 1 ("Compl."), ¶ 3. Defendant is the Commissioner of the DBO for the State of California. *Id*. ¶ 4.

Nationwide is an administrator of biweekly loan repayment programs. *Id*. ¶ 8. Nationwide has approximately 125,000 customers around the country, including over 10,000 in California. *Id*. At issue in the instant litigation is a Nationwide program called the "Interest Minimizer" biweekly program, which is targeted at borrowers with home mortgages. *Id*. ¶ 10. According to Nationwide, most mortgage servicers debit a borrower's mortgage payments on a monthly basis. *Id*. Under Nationwide's "Interest Minimizer" program, Nationwide acts as an intermediary between the borrower and the mortgage servicer. Specifically, Nationwide arranges with the borrower to debit one-half of the borrower's monthly mortgage payment from the borrower's checking account every other week. *Id*. Nationwide then remits the mortgage payments to the mortgage servicer once per month, as required by the servicer. *Id*. However, because Nationwide debits the mortgage payments on a bi-weekly (as opposed to monthly) basis, Nationwide debits 26 times over the course of the year, effectively resulting in the creation of a 13th annual payment (as opposed to 12 annual payments under a traditional monthly repayment plan). *Id*. ¶¶ 9, 12-13. Nationwide claims that the extra payment per year saves its customers money by allowing Nationwide's customers to pay off their mortgage loans faster than they otherwise would. *Id*. ¶ 12-13.

#### 1.     Investigation of Nationwide's Business Practices in California

The instant litigation stems from an investigation initiated by the Monterey County and Marin County District Attorneys' Offices into Nationwide's business practices in California.[1] On July 30, 2013, Nationwide received a letter from the Monterey County District Attorney's Office.

---

[1] Nationwide has filed a separate related lawsuit against the Monterey County and Marin County District Attorneys' Offices, as well as two deputy district attorneys from those offices. *See Loan Payment Administration LLC et al. v. Hubanks et al.*, Case No. 14-CV-05166-LHK. In that case, Nationwide filed a motion for preliminary injunction seeking to prohibit the District Attorneys from enforcing certain state statutes against Nationwide. *See* Case No. 14-CV-05166-LHK, ECF No. 5. This Court denied Nationwide's motion for a preliminary injunction on March 17, 2015. *See* ECF No. 50.

2
Case No. 14-CV-05166-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

ECF No. 5-1, at 14 ("Enforcement Letter"). The Enforcement Letter stated that the District Attorneys for Marin and Monterey County "are in receipt of numerous complaints about the marketing and business practices of Nationwide Bi-Weekly Administration, Inc." *Id*. The subject of the consumer complaints were solicitation letters Nationwide mailed to homeowners asking them to participate in Nationwide's "Interest Minimizer" program. *Id*. These solicitation letters used the names of the homeowners' mortgage lenders—including in the headers of the letters and multiple times throughout the letters' text—as well as homeowners' loan information, such as their loan amounts. *Id*. at 14-16. According to the Enforcement Letter, Nationwide's use of lenders' names and consumer loan information "[has] the capacity to deceive and mislead consumers into believing Nationwide is sponsored by or affiliated with the lender, the solicitation is authorized by the lender, or the consumer's loan information was provided by the lender." *Id*. at 15. The Enforcement Letter also stated that Nationwide's use of lenders' names and consumers' loan information violated state consumer fraud statutes as well as the state's prohibition on unlawful business practices. *Id*. at 14-16.

      The Enforcement Letter then stated that Nationwide "may [also] be in violation of California's Check Sellers, Bill Payers and Proraters Law (California Finance Code section 12000 *et. seq*.)." *Id*. at 16. According to the Enforcement Letter, based on Nationwide's offer to California customers of the company's "Interest Minimizer" service, "it would appear Nationwide is acting as a prorater and therefore required to obtain a prorater license."[2] *Id*. The Enforcement Letter stated that neither Nationwide nor its affiliate, Loan Payment Administration, had obtained a prorater license from the DBO. *Id*. In a subsequent email between an attorney for Nationwide and a deputy district attorney with the Monterey County District Attorney's Office, the deputy district attorney stated that the DBO "has joined the prosecution team" and was "now a signatory on the tolling agreement" between Nationwide and the Monterey and Marin County District

---

[2] California law defines a prorater as a person "who, for compensation, engages in whole or in part in the business of receiving money or evidences thereof for the purpose of distributing the money or evidences thereof among creditors in payment or partial payment of the obligations of the debtor." Cal. Fin. Code § 12002.1.

3
Case No. 14-CV-05166-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Attorneys' Offices. ECF No. 5-1, at 18.

On October 21, 2014, Nationwide received a letter from the DBO. ECF No. 5-1, at 21. The letter stated that it "serves to notify Nationwide that an investigation is currently underway by the Department's Enforcement Division regarding possible unlicensed business activity by Nationwide in California." *Id*. The letter requested that Nationwide make several disclosures, including "[a] comprehensive description of all past and current services offered by Nationwide in California," "[t]he dates that Nationwide has done business in California," and "[t]he revenue generated by Nationwide by year since it has conducted business in California." *Id*. The letter concluded by saying that the "above information is needed to begin the Department's review and may not reflect the full extent of information that the Department may require in the future to complete its investigation." *Id*.

### 2. The Relevant Provisions of California's Financial Code

The relevant provisions of the Check Sellers, Bill Payers and Proraters Law ("Proraters Law") are contained in sections 12000-404. Section 12200 prohibits a person from "acting as a prorater" "without first obtaining a license from the commissioner." Cal. Fin. Code § 12200. A "prorater" is defined as "a person who, for compensation, engages in whole or in part in the business of receiving money or evidences thereof for the purpose of distributing the money or evidences thereof among creditors in payment or partial payment of the obligations of the debtor." *Id.* § 12002.1. The prohibition on "acting as a prorater" without a license, however, is subject to various exceptions. *See, e.g.*, *id.* § 12100. For example, the Proraters Law does not apply to persons possessing a real estate license, "when acting in any capacity for which he or she is licensed." *See id.* § 12100(g); Cal. Bus. & Prof. Code, Division 4, Part 1. The burden of proving an exception from the Proraters Law is upon the person claiming the exception. Cal. Fin. Code § 12101.5.

Only if an individual is a prorater, and not subject to an exception, would that individual need a prorater's license from California to comply with the Proraters Law. *See, e.g.*, *id.* §§ 12200, 12002.1, 12100. In such circumstances, the code provides that a prorater's license shall

only be issued to corporations "organized under the laws of this State for that purpose." *Id.* § 12200.1.

### 3. Investigations of Nationwide in Other States

Whether Nationwide conducts certain unlicensed business activities has been the subject of investigations in states other than California. For instance, on October 21, 2011, Nationwide entered into a consent order with the State of New Hampshire Banking Department. ECF No. 32-2. That consent order provided, among other things, that "Nationwide has conducted money transmitter activity for New Hampshire consumers without a valid Money Transmitter license issued by the Department."[3] *Id.* at 3. Similarly on December 29, 2012, Nationwide entered into a consent order with the Georgia Department of Banking and Finance. ECF No. 32-3. That consent order provided that Nationwide "shall strictly comply with the terms of this Consent Order, the Georgia Residential Mortgage Act, including but not limited to O.C.G.A. § 7-1-1002." *Id.* at 2. Section 7-1-1002 prohibits, *inter alia*, "any person to transact business in this state directly or indirectly as a mortgage broker, a mortgage lender, or a mortgage loan originator" without a license, or to "purchase, sell, or transfer one or more mortgage loans or loan applications" from or to an unlicensed mortgage originator, broker, or lender. Ga. Code. § 7-1-1002(a)-(b).

### B. Procedural History

On November 21, 2014, Nationwide filed the instant lawsuit in this Court. *See* Compl. Nationwide asserts four causes of action. First, Nationwide alleges that § 12200.1, as applied to Nationwide, is *per se* invalid under the dormant Commerce Clause of the U.S. Constitution because the statute "prevent[s] Nationwide from doing business in California strictly on the basis of its incorporation outside the state of California." *Id.* ¶ 34. Second, Nationwide alleges that enforcement of the state's Proraters Law against Nationwide would violate Nationwide's right to substantive due process in violation of the Fourteenth Amendment of the U.S. Constitution. *Id.* ¶

---

[3] New Hampshire law provides in relevant part that "[a]ny person [who] . . . in its own name or on behalf of other persons, transmits money from this state or to persons within this state, shall obtain a license from the banking department." N.H. Rev. Stat. § 399-G:3.

39. Third, Nationwide alleges that the DBO's threatened enforcement of the state's Proraters Law against Nationwide would treat Nationwide differently from other similarly-situated companies and therefore violates Nationwide's right to equal protection of the laws in contravention of the Fourteenth Amendment of the U.S. Constitution. *Id.* ¶¶ 45-47. Fourth, Nationwide alleges that the state's Proraters Law is unconstitutional because it is void for vagueness. *Id.* ¶¶ 52-54.

Also on November 21, 2014, Nationwide filed a motion for a preliminary injunction arguing that it is entitled to a preliminary injunction based on its claim that Financial Code § 12200.1, as applied to Nationwide, violates the dormant Commerce Clause of the U.S. Constitution. *See* ECF No. 5 at 2. Defendant filed an opposition (ECF No. 31) that argued, inter alia, that Nationwide failed to establish that Nationwide had Article III standing or that its claim is ripe (*id.* at 12-19). On March 18, 2015, after considering the submissions of the parties and the relevant law, this Court denied Nationwide's motion for a preliminary injunction. ECF No. 45. Specifically, this Court found that Nationwide failed to satisfy its burden to establish that Nationwide would likely prevail on the merits of its dormant Commerce Clause claim (*id.* at 15) or that Nationwide would likely face irreparable harm absent an injunction (*id.* at 18). The Court further noted that because "Nationwide's injury is too speculative to warrant injunctive relief, the Court does not need to address Defendant's argument in the alternative [regarding lack of ripeness] at this time." *Id.* at 18 n.6.[4]

On January 9, 2015, Defendant filed the instant Motion. ECF No. 30. Defendant argues that this Court should dismiss each count of Nationwide's four-count complaint under Rule 12(b)(1), because Nationwide lacks standing, or under Rule 12(b)(6), because Nationwide fails to plead claims for which relief can be granted. Nationwide filed an opposition (ECF No. 39), and Defendant filed a reply (ECF No. 41).

On May 15, 2015, the DBO and the District Attorneys of Monterey, Marin, and Alameda

---

[4] On March 20, 2015, Nationwide filed a Notice of Appeal from this Court's Order denying a preliminary injunction. ECF No. 46. This Court retains jurisdiction over the action on the merits notwithstanding Nationwide's appeal. *See, e.g.*, *Phelan v. Taitano*, 233 F.2d 117, 119 (9th Cir. 1956) (citing *Ex parte Nat'l Enameling & Stamping Co.*, 201 U.S. 156 (1906)).

Counties filed a civil enforcement action against Nationwide in Alameda County Superior Court. *California v. Nationwide Biweekly Admin.*, Case No. RG15770490; *see also* ECF No. 56-1.[5] The complaint in the civil enforcement action contains six causes of action and contends that Nationwide's practices constitute: (1) Unlicensed Business Activities in violation of California Financial Code § 12200; (2) Fee Overcharges and Unauthorized Charges in violation of California Financial Code §§ 12314, 12314.1; (3) Unlawful Use of Lender's Name in violation of California Business and Professions Code §§ 17200, 14701; (4) Unlawful Use of Consumer's Loan Information in Violation of California Business and Professions Code §§ 17200, 14702; (5) False Advertising in violation of California Business and Professions Code § 17500; and (6) Unfair Competition in violation of California Business and Professions Code § 17200. *See generally* ECF No. 56-1.

On June 3, 2015, Defendant filed a supplemental brief, arguing that this Court should abstain under *Younger v. Harris*, 401 U.S. 37 (1971).  ECF No. 55.  Nationwide filed an opposition (ECF No. 57), and Defendant filed a reply (ECF No. 58).

## II.  LEGAL STANDARD

"In *Younger v. Harris*, [401 U.S. 37 (1971)], the Supreme Court reaffirmed the long-standing principle that federal courts sitting in equity cannot, absent exceptional circumstances, enjoin pending state criminal proceedings." *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 758 (9th Cir. 2014).  The Supreme Court later extended the *Younger* principle to civil enforcement actions "akin to" criminal proceedings. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975).  "*Younger* abstention is appropriate only when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." *ReadyLink*, 754 F.3d at 759 (citing *Sprint Commc'ns, Inc. v. Jacobs*, 134 S.

---

[5] Defendant's unopposed request for judicial notice of the state court proceeding (ECF No. 56) is hereby GRANTED.  *See also Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial notice of filings in the public record from a California state court proceeding).

7
Case No. 14-CV-05166-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Ct. 584, 593-94 (2013)). If these "threshold elements" are met, the Court then considers whether the federal action would have the practical effect of enjoining the state proceedings and whether an exception to *Younger* applies. *ReadyLink*, 754 F.3d at 759. If the threshold elements are met, and no exception applies, the Court should dismiss actions involving injunctive or declaratory relief, and stay actions where damages are at issue until the state proceedings are completed. *Gilbertson v. Albright*, 381 F.3d 965, 968-69 (9th Cir. 2004) (en banc).

## III. DISCUSSION

### A. The *Younger* Threshold Elements

Defendant argues that each of the *Younger* threshold elements is satisfied in this case. ECF No. 55. Nationwide's opposition only disputes the first threshold element, that the state enforcement action is "ongoing" pursuant to *Younger*. ECF No. 57 at 2-5. Moreover, there is no dispute that the instant action challenges the Proraters Law, which is also asserted against Nationwide in the state enforcement action. Because each of the *Younger* threshold elements must be satisfied, this Court will address each element in turn. *See ReadyLink*, 754 F.3d at 759 ("[e]ach element must be satisfied").

#### 1. Ongoing state proceeding

Defendant argues that the state enforcement action is ongoing because, although the state enforcement action was filed about six months after Nationwide filed the instant action, the state proceeding is now pending, and there have been no proceedings on the substance of the merits in this instant action. ECF No. 55 at 2-3. Nationwide responds that because the case has been pending in this Court for more than six months, *Younger* abstention is inappropriate because the length of pendency in federal court serves as a proxy for whether the case has progressed beyond an embryonic stage. ECF No. 57 at 2-5. For the reasons stated below, the Court agrees with Defendant. The Court will first address the timing issue, before addressing the status of the instant action.

##### a. Timing

In *Hicks v. Miranda*, 422 U.S. 332 (1975), the U.S. Supreme Court held that "*Younger v.*

8

Case No. 14-CV-05166-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

*Harris* could not be avoided on the ground that no criminal prosecution was pending against the [federal plaintiffs] on the date the federal complaint was filed." *Id.* at 349. Moreover, the Court observed that none of the Court's prior decisions "has held that for *Younger v. Harris* to apply, the state criminal proceedings must be pending on the day the federal case is filed." *Id.* Instead, "where state criminal proceedings are begun against the federal plaintiffs after the federal complaint is filed but before any proceedings of substance on the merits have taken place in the federal court, the principles of *Younger v. Harris* should apply in full force." *Id.* Thus, the critical issue is whether "any proceedings of substance on the merits have taken place in the federal court." *Id.* The Ninth Circuit is in accord: "Whether the state proceedings are 'pending' is not determined by comparing the commencement dates of the federal and state proceedings. Rather, abstention under *Younger* may be required if the state proceedings have been initiated before any proceedings of substance on the merits have taken place in the federal court." *Polykoff v. Collins*, 816 F.2d 1326, 1332 (9th Cir. 1987).

Nationwide argues that because this case has been pending for slightly longer than six months, the case has necessarily progressed beyond an embryonic stage. ECF No. 57 and 3. Nationwide then compares this six-month period to the lengths of time in other cases where courts have refused to abstain under *Younger*. *See id.* at 3. But Nationwide cites no authority for the proposition that this Court may place a myopic focus on the length of time a case has been pending, rather than analyzing how far the case has progressed on the merits in federal district court. Nor can this Court disregard Ninth Circuit authority that the critical issue is whether "any proceedings of substance on the merits have taken place in the federal court." *Polykoff*, 816 F.2d at 1332. The mere length of pendency is not dispositive of that issue and, accordingly, the Court will now address whether any proceedings of substance on the merits have taken place in this Court.

### b.   Status of instant litigation

Nationwide argues that this case has progressed beyond an embryonic stage because the Court has already denied Nationwide's motion for preliminary injunction, and the parties have

9

Case No. 14-CV-05166-LHK
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

briefed a motion to dismiss, submitted a joint case management statement, and Nationwide filed its opening appellate brief in the Ninth Circuit from this Court's denial of a preliminary injunction. ECF No. 57 at 3. The Court does not agree with Nationwide's conclusion.

Although the grant of a preliminary injunction is considered to be a proceeding of substance for *Younger* purposes, the denial of a preliminary injunction is not. *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 238 (1984) (holding issuance of a preliminary injunction to be "a substantial federal court action" pursuant to *Younger*); *Polykoff*, 816 F.2d at 1332 ("denial of a temporary restraining order is not considered a proceeding of substance on the merits"); *see also Fresh Int'l Corp. v. Agric. Labor Relations Bd.*, 805 F.2d 1353, 1358 n.5 (9th Cir. 1986) ("It may be that issuance of a temporary restraining order, as opposed to denial of one, is a proceeding of substance on the merits."). Moreover, the mere fact that Nationwide decided to appeal this Court's denial of a preliminary injunction similarly fails to advance this case beyond an embryonic stage. Any such appeal is not a proceeding of substance on the merits in this Court, and Nationwide cites no authority to the contrary.

The Ninth Circuit authorities cited by Nationwide are inapposite. ECF No. 57 at 2-3 (citing *Hoye v. Oakland*, 653 F.3d 835 (9th Cir. 2011), and *Adultworld Bookstore v. Fresno*, 758 F.2d 1348 (9th Cir. 1985)). In both *Hoye* and *Adultworld*, the Ninth Circuit reversed decisions of district courts that had abstained under *Younger*. In *Hoye*, although the district court denied a temporary restraining order, the case continued to progress as the Court conducted four status conferences with the parties and the Court's on-the-record expression of its deep reservations about the constitutionality of the City Council's actions resulted in a change in policy by the City Council. 653 F.3d at 844. In other words, it was not the mere denial of injunctive relief that led the Ninth Circuit to conclude that the case had progressed beyond an embryonic stage. It was, instead, that "the District Court's intervention in the case had resulted in a significant change in the relative positions of the parties." *Id.*

Similarly, in *Adultworld*, although the district court denied the preliminary injunction, the district court previously granted a temporary restraining order. 758 F.2d at 1349. Moreover, the

district court conducted an "extended evidentiary hearing" on plaintiff's motion for a preliminary injunction and denied the motion for preliminary injunction as moot when it abstained under *Younger*. *Id.* at 1350-51 ("Because the district court should not have abstained, the court also erred in not reaching the merits of Adultworld's motion for a preliminary injunction.").

In the instant case, unlike in *Hoye* or *Adultworld*, the Court has not granted injunctive relief, conducted evidentiary hearings, held case management conferences, or even set a case schedule. Although Nationwide filed the instant case in November 2014, this case has not progressed beyond an embryonic stage. The parties have briefed a motion for preliminary injunction (ECF No. 5) and a motion to dismiss (ECF Nos. 30, 55). Of these, the Court denied Nationwide's motion for preliminary injunction on March 18, 2015, without an evidentiary hearing, determining that Nationwide failed to demonstrate a likelihood of success on the merits and failed to carry its burden to show that real and immediate harm would result absent a preliminary injunction. *See generally* ECF No. 45. Moreover, Defendant has not answered Nationwide's Complaint, nor has the Court held an initial case management conference in this case. ECF No. 53. Accordingly, the Court has neither set a case schedule nor approved a discovery plan. *See* Fed. R. Civ. P. 26. This case remains in its infancy and, because the state enforcement proceeding is currently pending, the "ongoing state proceeding" element of *Younger* is satisfied.

### 2. Quasi-criminal enforcement action

Neither party disputes that the state enforcement proceeding is a quasi-criminal enforcement action. The Court agrees. The state enforcement proceeding was filed against Nationwide by the DBO and District Attorneys on behalf of the People of the State of California to enforce various provisions of California's Business and Professions and Financial Codes, including the Proraters Law. For civil enforcement actions that are akin to criminal proceedings for *Younger*, "a state actor is routinely a party to the state proceeding and often initiates the action, the proceedings are characteristically initiated to sanction the federal plaintiff for some wrongful act, and investigations are commonly involved, often culminating in the filing of a formal

11

1  complaint or charges." *ReadyLink*, 754 F.3d at 759 (citing *Sprint*, 134 S. Ct. at 592).  Each of
2  those facts is present here.  Accordingly, the "quasi-criminal enforcement action" element of
3  *Younger* is satisfied.

### 3.  Implicates an important state interest

Neither party disputes that the state enforcement proceeding "implicates an important state interest."  The Court agrees.  The state enforcement proceeding implicates the important California interest of protecting consumers from protecting California's consumers from alleged abuse and fraud, and ensuring that entities who handle other people's money, such as proraters, are regulated and licensed.  *See also Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 434 (1982) (recognizing state's "extremely important interest" in maintaining and assuring licensees' professional conduct).  This is further evidenced by the state enforcement action having been filed in state court on behalf of the people of the state of California. Accordingly, the "implicates an important state interest" element of *Younger* is satisfied.  *Id.* at 432 ("The importance of the state interest may be demonstrated by the fact that the noncriminal proceedings bear a close relationship to proceedings criminal in nature." (citing *Huffman*, 420 U.S. 592)).

### 4.  Allows Nationwide to raise federal challenges

Neither party disputes that Nationwide will be allowed to raise federal challenges in the state enforcement proceeding.  The Court agrees.  State courts are presumed to be an adequate venue in which to assert federal challenges "in the absence of unambiguous authority to the contrary."  *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987); *Hirsh v. Justices of the Supreme Court of California*, 67 F.3d 708, 713 (9th Cir. 1995).  In the instant case, there is no such unambiguous authority suggesting otherwise.  *Kenneally v. Lungren*, 967 F.2d 329, 333 n.3 (9th Cir. 1992) (finding California's superior courts are "fully capable of adjudicating and protecting [a litigant]'s constitutional rights.").  Accordingly, the final element of *Younger* is satisfied.

For the reasons explained above, each of the *Younger* threshold elements has been established.  Accordingly, the Court will next consider whether the federal action would have the

practical effect of enjoining the state proceedings and whether any exceptions to *Younger* apply. *ReadyLink*, 754 F.3d at 759.

### B.     Remaining Considerations

#### 1.     Practical effect of enjoining state proceedings

Neither party disputes that the practical effect of Nationwide's federal complaint is to enjoin the state proceedings. The Court agrees. Nationwide's complaint seeks declaratory and injunctive relief, including, for example, a "permanent injunction against Defendant prohibiting Defendant from enforcing the Prorater Law against Nationwide." Compl. 9. Were the Court to grant such relief, it would enjoin the ongoing state enforcement action. Accordingly, this additional predicate for *Younger* abstention is met. *ReadyLink*, 754 F.3d at 759.

#### 2.     Exception for bad faith

Nationwide argues that even if the elements for *Younger* abstention are met, the instant case is excepted from the doctrine because the state enforcement action was brought in bad faith and because this case presents a patent constitutional violation. ECF No. 57 at 4-5. Defendant responds that Nationwide has fallen far short of establishing bad faith, which "generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction." ECF No. 58 at 2 (quoting *Baffert v. California Horse Racing Board*, 332 F.3d 613, 621 (9th Cir. 2003)). Upon review of the parties' arguments, the Court agrees with Defendant. The Court is not left with the impression that the state enforcement action was brought in bad faith. First, each of Nationwide's contentions is based on pure speculation without support, and the Court denies Nationwide's request to conduct discovery into the alleged bad faith motives of Defendant in this case (ECF No. 57 at 5) when these issues may be further explored in state court. Second, for the reasons explained above, the instant case remains in its infancy. Although the parties have made numerous filings in this Court, and Nationwide has already appealed this Court's denial of Nationwide's motion for a preliminary injunction, the Court's involvement to date has been minimal, this being the second motion resolved in the case to date. Finally, Nationwide filed the instant action and its motion for a preliminary injunction based on the

13

1 premise that Defendant would, in fact, file a state enforcement action. Nationwide's argument that

2 Defendant's actual filing of the state enforcement action demonstrates bad faith is not persuasive.

3       Moreover, Nationwide's argument that its case presents a patent constitutional violation

4 also fails to convince this Court that *Younger* abstention is inapplicable. First, this Court has

5 already rejected Nationwide's constitutional argument when it denied Nationwide's motion for

6 preliminary injunction. *See* ECF No. 45. That decision is law of the case. Second, Nationwide

7 cites no authority indicating that an alleged patent constitutional violation serves as an exception

8 to *Younger*. Finally, Nationwide will have ample opportunity to present its constitutional

9 challenge to the California Superior Court.

10       Accordingly, Nationwide has failed to persuade the Court that any exception to *Younger* is

11 applicable here.

### C. Dismissal Is Warranted

Having concluded that abstention under *Younger* is the appropriate course, the Court must determine how to dispose of the case. Defendant's motion seeks dismissal under *Younger* (ECF No. 55 at 5), and Nationwide's opposition does not argue for a stay (*see generally* ECF No. 57). In the instant case, because Nationwide seeks only declaratory and injunctive relief, not damages, the Court agrees that dismissal is the proper course. *See Gilbertson*, 381 F.3d at 968 (under *Younger*, "federal courts should not dismiss actions where damages are at issue; rather, damages actions should be stayed until the state proceedings are completed"). Accordingly, dismissal is appropriate here.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED. The instant action is DISMISSED without prejudice. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: June 17, 2015

                                               *Lucy H. Koh*
LUCY H. KOH
United States District Judge